Augustus Schenk *et al. v.* John Evoy *et al.*

# AUGUSTUS SCHENK AND ADOLPHUS SCHWARTZ *v.* JOHN EVOY AND JOSEPH MULLIKEN.

DESCRIPTION OF LAND IN DEED.—Where a deed conveys a given quantity of land, parcel of a larger tract, and the deed fails to locate the quantity so conveyed by a sufficient description, the grantee, on the delivery of the deed, becomes interested in all the lands embraced within the larger area, as tenant in common with his grantor. The grantee has no right to locate the quantity called for by his deed on any portion of the larger area, as against the will of his grantor, unless such right is conferred upon him by some stipulation to that effect in the deed.

SEGREGATION OF LAND SOLD.—Where the calls of such a deed do not identify the land with certainty, the mere fact that at the time of the delivery of the deed the grantee paid to the grantor the purchase money, raises no presumption that the grantor segregated and placed him in the possession of a particular tract as the land conveyed.

ISSUE IN PLEADINGS.—The complaint charged that on a day mentioned the plaintiffs were lawfully seized and possessed and had the right of possession of a certain tract of land, and that defendants afterwards entered into and upon the said tract, and ousted plaintiffs threrefrom. The answer in response to these allegations averred, that the defendant was not guilty of the supposed trespasses and ejectment in the complaint mentioned, nor of any part thereof: held, that the answer raised no issue.

CONFESSION OF ALLEGATION OF COMPLAINT.—The complaint in ejectment was filed on the 27th of January, and averred that the defendants were in possession of the demanded premises. The answer was filed on the 8th day of February, and the only response to this averment was as follows: And "this defendant further says, that he is not in possession of the lands and tenements described in the complaint, or any part thereof;" held, that the allegation of the complaint must be taken as confessed.

APPEAL from the District Court, Fourth Judicial District, County of Contra Costa.

The complaint averred that on and after the first day of January, 1860, the plaintiffs were lawfully seized and pos-

sessed and had the right to the possession of a certain tract of land, consisting of about one thousand acres, situate and lying in said County of Contra Costa, and being particularly described as follows, to wit:

All that certain piece of land, situate, lying, and being in the County of Contra Costa, and being part of the rancho known as the " Sobrante," on the western side of San Pablo Creek, and about seven miles from San Pablo town, in a valley known as Cruzito Valley. [Then followed a description by metes and bounds of the demanded premises.] The complaint then averred, that " the defendants, afterwards, and before the institution of this action, to wit: on or about the fourteenth day of January, one thousand eight hundred and sixty, at said county, unlawfully entered into and upon said tract of land, and ousted and ejected the plaintiffs therefrom, and have hitherto unlawfully withheld, and now do unlawfully withhold the possession of said tract of land at the commencement of this action from the plaintiffs," etc.

Following was the separate answer of defendant Mulliken:

"And the said defendant, Joseph Mulliken, comes and says, that he is not guilty of the supposed trespasses and ejectment in the complaint mentioned, or any part thereof. He further says that he is not in possession of the lands and tenements described in said complaint, or any part thereof, nor does he withhold, nor had he withheld the same from the plaintiffs, as is untruly alleged in their said complaint, wherefore he prays judgment that he go hence without day," etc.

March 13th, 1856, Frisbie and De Zaldo sold to Germon one thousand acres. The description of the land as contained in this deed is found in the opinion.

November 11th, 1857, Germon sold to plaintiff Schenk, by the same description. December 18th, 1859, Schenk sold to plaintiff Schwartz one half of his interest in the one thousand acres. In April, 1857, Frisbie and De Zaldo sold to Adams one half of the entire Sobrante claim, and to Hepburn one fourth of one half of the same tract. In January, 1858, Hepburn sold to Sanders one eighth of one half of the Sobrante.

On the 21st of February, 1859, Frisbie and Adams executed to plaintiff Schenck a deed of one thousand acres, in which the land is located and described by metes and bounds, as in the complaint, and as surveyed by the witness Whitcher.

At this time, Hepburn and Sanders had become tenants in common with the other owners in the Sobrante, and they did not join in this deed, nor was there any proof that they had consented to the segregation of the one thousand acres.

The plaintiffs recovered judgment in the Court below, and defendants appealed.

*M. S. Chase,* for Appellant.

The complaint was sufficient in ejectment, and the answer of this defendant (Mulliken) denied the allegation neither of seizin, entry, ouster, or damage, and traverses the *character* only, and not the *fact* of the detention.

" Every material allegation of the complaint not specifically controverted by the answer shall, for the purposes of the action, be taken as true." (Civ. Prac. Act, sec. 65 ; *Dewey* v. *Bowman,* 8 Cal. 145 ; *Busenius* v. *Coffee,* 14 Cal. 91.)

A grant of a specified number of acres, to be taken out of a larger quantity of land, passes title to them as an undivided portion, and a subsequent location of the acres, pursuant to the right of election given, followed up by possession, is good as a partition by parol. (*Corbin* v. *Jackson,* 14 Wen. 619 ; *Jackson* v. *Livingston,* 7 Wen. 136.)

Besides, there is no uncertainty on the face of the deed, for " *certum est quod certum reddi potest.*"

There could be but *one* survey which could be *correct,* and that survey could be *precisely* made from the calls in the deed. Those calls were for one thousand acres in the Cruzito Valley on the west side of the San Pablo Creek, " to be laid out *as near as possible* in a *square* form," having for its eastern boundary the course of the creek, and the other three boundaries to be all straight *lines,*" etc.

There was, therefore, on the line following the course of the creek (say for six or eight miles through the valley, as

Whitcher testifies,) a *certain part* of said line where this one thousand acre tract, with three straight lines for its three sides, could be, if not squared, at least, " laid out *as near as possible* in a square form," and it is equally clear and mathematically certain, that there was but *one* portion of that line on which this could be done. For it is axiomatic in nature, and the Court will so judicially notice, that no natural stream or creek is *precisely straight* for a distance of six or eight miles, but that, on the contrary, through such a distance, every one will meander more or less, and vary from a straight line somewhat, however little be the variation, and the Court will not fail to observe in the case at bar, that *where* in this valley this creek meandered the least, and where, at the same time, this line of least meander would so conform with the other three boundaries given of the one thousand acre tract, that the same could be laid out in a form *nearest* square, *there* was the easterly line called for by the deed.

*Thomas A. Brown*, for Respondent.

The description of the premises in the deed of the 13th March, 1856, from Frisbie & De Zaldo to Germon (under which the plaintiffs claim the premises in controversy) is indefinite and uncertain, (if the deed is not absolutely void for uncertainty in its description of the premises intended to be conveyed.) The most that the grantees can claim, under the deed, is an undivided interest in the Sobrante Rancho to the extent of one thousand acres of land, to be located on the west side of the creek in the *Cruzito Valley.*

It is apparent from the language used in the deed, taken with the testimony of the surveyor, that the land conveyed could not be located at any particular place without some further agreement between the parties. The tract could as well have been located at any other point on the San Pablo Creek, in the *Cruzito Valley*, within a distance of six or eight miles, as where it was located.

The tract of the deed is to be located in as near a square

form as possible; this would give each side of the square a length of one mile and one fifth of a mile, and according to Whitcher's testimony, the Cruzito Valley contains about six times as much land as was conveyed, and the grantees took, if anything, an undivided portion of the land in that valley, and the other tenants in common own the remainder.

The cases of *Jackson ex dem. Gamsey,* 7 Wendell, 136, and afterwards affirmed in *Cohen* v. *Jackson,* 14 Wendell, 619, cited in appellants' brief, do not support appellants' case.

In those cases, six hundred acres of land was sold, *to be surveyed or taken off of a large tract,* and the right of election *was given to the grantees,* which they subsequently made. It was held, that "though by the deed the grantees became *tenants in common* with the owners of the tract, the election, followed up by possession, operated as a *parol partition.*"

In the case at bar, no right of election was given to the grantee, nor can any location of the land conveyed in the deed to Germon be made except by consent of all the tenants in common, or by partition.

The portion conveyed, not being set forth by metes or bounds, or other description, from the remainder of the land on the west side of San Pablo Creek, in Cruzito Valley, by means of which it can be separated or distinguished from the remainder, the grantee, Germon, takes the one thousand acres as tenant in common with the other owners of the land. (*Lick* v. *O'Donnell,* 3 Cal. 63.)

The case may be stated thus: The plaintiffs own an undivided interest, to the extent of one thousand acres, in the Sobrante Rancho, to be located in the Cruzito Valley. The defendants own an undivided interest in all the land on the Sobrante Rancho. Both parties, as tenants in common, are entitled to the possession, and neither has the right to disturb the other. The possession and seizin of one tenant in common is the possession and seizin of the other. Both parties trace title from the same source—Frisbie and De Zaldo.

By the Court, SHAFTER, J.

Appeal from judgment in ejectment, and from order over-ruling motion for new trial.

Among other questions presented by the record, we are required to determine the legal effect of a deed executed by Frisbie and De Zaldo to Adolphus Germon, March 13th, 1856. Through sundry mesne conveyances, all the rights of Germon acquired by this deed passed to and became vested in Augustus Schenk, one of the appellants, on the 11th day of November, 1857. The following description of the premises conveyed is found in all of the deeds referred to :

"Have granted, bargained, and sold, aliened, remised, released, conveyed, and confirmed, and by these presents do bargain, sell, alien, remise, release, convey, and confirm, unto the said party of the second part, and to his heirs and assigns forever, all that piece or parcel of land described as follows : Situate upon the western side of San Pablo Creek, in a valley known as the 'Cruzito Valley,' which is a part of the tract of land known as the Sobrante claim, and situated in Contra Costa County, and State of California, bounded and described as follows : Having for the eastern boundary thereof a line following the course of San Pablo Creek, as it now runs, through the centre thereof from the northern to the southern extremity of said valley, and extending back westward from said line so as to include one thousand (1000) acres of land, and no more, on the western side of said valley ; said land to be laid out, as near as possible, in a square form ; all the lines, except the first mentioned line, to be straight, conforming with the cardinal points by true meridian."

The appellants contend :

1. That the deed from Frisbie and De Zaldo to Germon, of March 13th, 1856, conveyed to the grantee one thousand acres of land, together with the absolute right of locating the same at any place in the Cruzito Valley, on the western side of San Pablo Creek.

2. That the calls of the deed referred to identified the land with sufficient certainty to enable a surveyor to survey it

correctly; and it is claimed as a fact that the land was so surveyed by the procurement of Schenk, in 1859 or 1860.

3. That the deed, being for a valuable and sufficient consideration, raises the presumption that the grantors were in possession, and that they, at the date of their execution of said deed, gave possession of the particular one thousand acres in controversy to the grantee Germon.

Where a deed is of a given quantity of land, parcel of a larger tract, and the deed fails to locate the quantity so conveyed by a sufficient description, the grantee, on delivering of the deed, becomes interested in all the lands embraced within the larger area, as tenant in common with his grantor; and as such tenant, the grantee can claim a partition under proceedings instituted for that purpose, or, alternatively, a partition may be made by amicable agreement between the parties. The grantee has no right to locate the quantity called for by his deed on any portion of the larger area, as against the will of his grantor, unless such right is conferred upon him by some stipulation to that effect in the deed.

These principles are fully recognized in *Jackson ex. dem. Gamsey* v. *Livingston*, 7 Wendell, 136. The plaintiff claimed to recover a certain lot known as No. 6, part of a tract of fifteen thousand three hundred and sixty acres of land granted to Malachi Treat and William W. Norris by letters patent. The plaintiff claimed under the patentees by a deed calling for six hundred acres, to be surveyed or taken off the aforesaid tract by the grantee at his election; the grantee elected to take the lands in controversy. It was held by the Court, that by the deed the grantee became tenant in common with the owners of the fifteen thousand three hundred and sixty acres, and that an election on his part to take Lot No. 6, followed up by possession, operated as a parol partition.

The judgment for the plaintiff was affirmed in the Court of Errors. Chancellor Kent, who delivered the opinion, in discussing the question, remarked as follows: "The title to the undivided six hundred acres passed immediately to the grantees under the deed, with the right to elect in which part

of the tract it should be located as soon as the patent was allotted. The testimony shows that the grantee exercised the right of election, and took possession of the six hundred acre lot as early as 1793. This location, in conformity with the provisions of the deed itself, rendered that certain and definite which was before uncertain, and gave a good legal title to the lot." (14 Wendell, 619.)

The doctrine of the foregoing cases was recognized in *Sick* v. *O'Donnel*, 3 Cal. 63.

But it is claimed for the appellants that inasmuch as the deed shows a money consideration of three thousand dollars paid, it is to be presumed that Frisbie and De Zaldo put Germon in possession of the one thousand acres sued for at the time when the deed was delivered, March 13th, 1856. The counsel for appellants has presented no authorities in support of this position, nor has he adduced any principle on the ground of which its correctness can be vindicated. There is obviously no necessary nor is there any natural or customary connection between the payment found and the segregation in dispute. The two facts may have transpired at the same point of time—March 13th, 1856—but the mere payment of the purchase money at that date has no appreciable tendency to prove that they did.

The appellants further insist that the calls of the deed in question identify the land with sufficient certainty to enable a surveyor to survey it correctly. In other words, it is claimed that the deed· is a deed by metes and bounds, and took effect as such from the moment of delivery.

In aid of this conclusion, reference is made to extraneous facts presented in the record.

Cruzito Valley is seven or eight miles long, and runs, in its general course, north and south. The one thousand acres called for by the deed lies in the valley, and on the west side of San Pablo Creek; and by the deed, they are to be laid out "*as nearly as possible* in a square form," the eastern side of the square resting upon the creek, "as it runs through the

centre of the valley;" the other sides of the square "to be straight, conforming with the cardinal points by true meridian."

We shall here assume the facts which the testimony of the surveyor, Whitcher, tended to prove. He surveyed the one thousand acres, claimed in the complaint, in 1859 or 1860, and his survey was according to the calls mentioned in the deed; but the land, according to his testimony on cross-examination, "could, perhaps, as well have been located to answer the calls of the deed at any other place on the west side of San Pablo Creek, within a distance of six or eight miles from one end of the valley to the other, as at the place where it was located."

If the stream was perfectly straight, then five perfect squares of a thousand acres each might have been erected on the western side of the creek on the 13th of March, 1856, each square having the stream for its eastern boundary. If the stream meandered through the valley, and the meanderings were perfectly uniform, a like number of perfect squares could have been formed at that date; but if the meanderings were unequal, then a square erected upon that section of the creek which approximated most nearly to a straight line would have been the square called for by the deed. But under the last hypothesis, even, there might have been two or more sections of the stream whose respective variations from a straight line were precisely the same. Whether the course of the stream was straight or otherwise, does not appear—nor, in the light of the surveyor's testimony, is it material to inquire. While his testimony tended to prove that the square formed by him in 1859 or 1860 answered the calls of the deed, it also tended to prove that five squares, at least, might have been formed upon the stream, each of which would have filled the calls of the deed quite as well. It is true that the witness says "perhaps as well;" but the witness was a surveyor of long standing, and was intimately acquainted with the valley. The burden was upon the plaintiffs in proving that the thousand acres could be located within the calls of the deed *only* at the place where it had been located by the surveyor in 1859 or

Augustus Schenk *et al. v.* John Evoy *et al.*

1860. In view of the numerous decisions of the late Supreme Court, too familiar to require citation, we are not at liberty to grant a new trial on the ground that the Judge who tried the cause failed to find on the testimony of Whitcher (which was the only testimony bearing on the question) that there was one spot only in the western half of the valley to which the deed could be applied.

The relation established between Frisbie and De Zaldo and Germon, by the deed of March 13th, 1856, was the relation of tenants in common, and that relation now subsists between the plaintiffs who have succeeded to the rights of Germon, and the defendant, Evoy, who has succeeded, in part, to the rights of Frisbie and De Zaldo.

The respondent, Mulliken, answered separately. In his answer he says "that he is not guilty of the supposed trespasses and ejectment in the complaint mentioned, nor of any part thereof." This, at the best, amounts to a general denial only; but as the complaint was sworn to, the traverse raised no issue. The answer proceeds as follows: "And this defendant further says, that he is not in possession of the lands and tenements described in said complaint, or any part thereof." The answer was filed on the 8th of February, 1860, and the complaint on the 27th of January of the same year. The complaint charges that the defendants were in possession at the commencement of the action, and to this allegation the answer makes no response, and therefore the truth of the allegation must be taken as confessed. The further allegation in Mulliken's answer—"nor does he withhold, nor has he ever withheld the same from the plaintiffs"—is not a sufficient denial of the charge that he was in possession at the time when the action was brought.

The several judgment in favor of Mulliken is reversed, and new trial ordered, and the judgment in favor of Evoy is affirmed.

Mr. Justice RHODES expressed no opinion.