### No. 8171.

**M. M. ADA LANE AND HUSBAND vs. SUCCESSION OF J. F. MARCH AND SHERIFF.**

The notice to be given by the tax collector to the owner or agent and the return to be made by the latter, in assessment proceedings, are acts required to be done but once, and when once validly performed, have their full effect without regard to subsequent changes of ownership. Therefore, if the owner dies after said notice and return, it is proper for the assessors to put on the rolls, instead of his name, that of his succession.

The former owner of property, sold by the tax collector, cannot complain of the insufficiency of the description of the property in the advertisement of sale, when the defective description is that given by the owner himself or his agent, in his return to the assessors. And parties, whose title is purely derivative from said former owner, have no better right to raise the objection.

A tax sale, like other judicial sales, when enjoined for only part of the property seized and advertised to be sold, is valid as to the portion which is not enjoined.

There is no force in plaintiffs' objection that the sale is invalid, because only consummated after the day the taxes passed into the list of delinquents, though the proceedings for the sale had been initiated long prior to that date.

APPEAL from the Twelfth Judicial District Court, parish of Grant. *Barbin*, J.

*Joseph P. Hornor* and *Francis W. Baker* for Plaintiffs and Appellants:

First—A party claiming property in a petitory action must recover on the strength of his own title rather than on the weakness of his adversary. 22 An. 57; 11 An. 546; 22 An. 20; 11 M. 293; 12 R. 46; 12 An. 512; 3 R. 206; 10 R. 505; 11 R. 233; 12 An. 748.

Second—Plaintiff, in a petitory action, may urge orally at the trial without otherwise pleading, any objections to the title set up in defendant's answer. 11 An. 546; 2 Hennen, Pleading V. (c) 2) No. 1.

Third—An illegal or insufficient assessment is a radical defect. 15 An. 15; 14 An. 709; 29 An. 507; 11 An. 214; 4 An. 252; 10 La. 283; 12 An. 748; 4 La. 150; 14 An. 209; 10 An. 726; 26 An. 730; 13 An. 210; 7 La. 50; 9 An. 550; 4 L. 207; 6 N. S. 349; 10 An. 327; 19 An. 184; 6 An. 542; 8 An. 19; 10 An. 193; 11 An. 87; 8 L. 198; 7 L. 50; 30 An. 871; 32 An. 704, 912, 925; Stafford vs. Twitchell, 33 An. N. R.; Blackwell's Tax Titles, pp. 123, 124, 106, 107, 65 and 392.

Fourth—The validity of a tax title depends upon literal, strict and technical rules, which govern the proceedings of the assessor and collector, and a strict conformity to all the requirements of the statute authorizing the sale. Stafford vs. Twitchell, 33 An. N. R., and above authorities.

Fifth—A tax collector can sell no other property than that described, and as described in the assessment rolls. Same authorities.

Sixth—An assessment which fails to give the name of the owner, the boundaries of the property, the numbers of the lots or squares, the names of the streets within which the lots are situated, the dimensions of the lots, or the names of the streets on which the lots front, is defective; the omissions cannot be supplied or cured by the tax collector, and any sale under such assessment is null. Sec. 32 of Act No. 42 of 1871, and above authorities.

Seventh—Under an assessment of 9000 acres of land in block, as four plantations, and horses, carriages, etc., thereon, town lots not mentioned or described on the assessment rolls cannot be sold by the tax collector for the whole tax, on both the immovable and movable property.

Eighth—In giving the public notice, the individual notice, seizing, recording, advertising, and deeding property, the tax collector must describe the property as it is described in the assessment rolls. If the assessment rolls are defective or do not sufficiently describe the property, the collector cannot supply such defect. Same authority.

Ninth—Under Act No. 42, of 1871, tax collectors were without authority to collect delinquent taxes, and could not sell to collect such delinquent taxes. Upon becoming delinquent, the property upon which tax was due became forfeited to the State, and the Auditor of Public Accounts alone had authority to collect the tax and issue certificates of redemption. Act 42, of 1871, Secs. 66, 67, 68 and 69.

Tenth—That which is null is not susceptible of confirmation. *Quod nullum est confirmari nequit.* 15 An. 569.

Eleventh—Knowledge is the essence of estoppel, which cannot be presumed. 10 R. 502; 17 An. 241; 4 R. 417.

Twelfth—Title to real estate cannot be proved nor helped out by parol.

Thirteenth—Actual knowledge, however, clearly brought home to the taxpayer, cannot dispense with strict compliance with every formality required by law, and no consent to their waiver can in any case be implied. Stafford vs. Twitchell, 33 An., N. R.  Blackwell on Tax Titles, p. 50; 4 L. 150 and 207; 18 La. 514; 14 An. 209.

*R. A. & R. P. Hunter, W. L. Richardson* and *H. L. Daigre* for Defendant and Appellee:

First—Plaintiffs' action cannot be maintained as either a petitory action or an action of nullity.

Second—The exception of no cause of action should be sustained.

Third—She cannot, on such allegations, arrest the succession sale.  12 Louisiana Reports, 123.

Fourth—The plea of prescription, which we set up by way of exception, should be sustained. Acts 1874, page 155, § 5.

Fifth—Plaintiff is estopped from setting up any irregularities in said tax sale by having consented to said sale in a judicial proceeding at the time.

Sixth—She cannot be heard to attack our title in a collateral way; indeed, she has not done so except in vague and general terms.  See Constitution 1868, Article 118; 30 An. 959.

Seventh—Even if she can be permitted to do so, all the proceedings were regular and proper, our tax title is valid and good in law.  Acts 1871, No. 42, §§ 23, 26, 30, 32, 40, 57, 59, 60, 62, 63; 31 An. 591; 28 An. 240, 352.

The opinion of the Court was delivered by

FENNER, J.  The view which we take of this case obviates the necessity of determining several preliminary objections urged by defendants to the form of the action, as well as the contentions between the respective parties as to the nature and scope of the action.

We will adopt the theory of the plaintiff, that it is a petitory action, in which each party sets up title to the property, and in which plaintiff has established title in herself upon which she must recover unless the defendant has shown a better title.

The defendant sets up a title derived from a sale for taxes made by the State tax collector of Grant parish on the 4th of January, 1873, and subsequently confirmed by the Auditor, which title, if not invalidated by some defects in the proceedings of assessment and sale, is superior to, and destructive of, the title established by plaintiff.

The sale was made for the taxes of 1871, on property belonging, at the date of the assessment, to Mrs. Mary S. Calhoun, the mother of plaintiff, and also of her brother, Wm. S. Calhoun, who was the agent of his said mother in the administration and management of said property, living in the parish and attending to the same, while his mother had been for many years, residing out of the parish.

The evidence leaves no doubt that W. S. Calhoun was such agent, and was the proper person, to whom, under section 23 of the Act of 1871, the assessment notice therein provided should be delivered, in order that the blanks therein might be filled up by him and returned to the officers of assessment as a basis for their action.

It is proved that the notice was duly served on him; that he filled up the blanks himself, including his own description of the taxable property of his principal; that he returned the said list to the assessing officers; and that it was entered on the assessment rolls precisely as described by him. It is proved that the return was made prior to the death of his mother, and while his capacity as agent was unquestioned. Thereafter, on June 10th, 1871, his mother died, and in making up the rolls the assessment of this property was entered as follows:

"W. S. Calhoun, agent, (succession M. S. Calhoun) 9000 acres, Smithfield, Ferenzie, Mirabeau and Meredith plantations, 4000 acres timber, $140,000; horses, mares, etc., $3340; carriages and vehicles, $240; total, $143,580."

To this assessment the following objections are made by plaintiff:

1st. That it does not contain the name of the owner. This objection is untenable on its face. The name of W. S. Calhoun, agent, is given to identify it with the return made by him, and doubtless the name of M. S. Calhoun, as owner, would have been added, but, she having died before the making up of the roll, her succession was properly substituted.

2d. That the *names* of the tracts are not given. They are given.

3d. That the boundaries of the property and the quantity of land in each tract are not given. This objection would be fatal, were it not that the assessment adopts and follows the description of the property given by the owner, through her agent, in the manner and at the time prescribed by law.

The assessors were perfectly justified in adopting and following the description of taxable property furnished, for the purpose, by the owner. If the owner choose to dispense with particulars of description, required by the law for her protection, and to permit, and even direct, her property to be assessed with an incomplete description, she cannot subsequently complain thereof and claim advantage from her own laches. Plaintiff, whose title is purely derivative from Mrs. M. S. Calhoun, has no better right to urge objections to this assessment than the latter would have had. W. S. Calhoun's acts as agent, in receiving, filling up, and returning, the assessment notice, were completed prior to the death of his principal, and were irrevocably binding as to the property, as to the owner, and as to all persons claiming under the latter, whose subsequent death had no effect whatever on their validity.

The notice to be given to the owner or agent, and the return to be made by the latter, in assessment proceedings, are acts required to be done but once, and when once validly performed have their full effect without regard to subsequent changes of ownership. This assessment, under these circumstances, must be maintained as perfectly valid and

as furnishing a full foundation for the tax and for subsequent proceedings in enforcement thereof.

## II.

The evidence establishes that, in the proceedings for sale of the property, every delay, notice, publication, and formality, prescribed by law, were minutely and technically complied with. The property, just as described on the assessment roll, which is the only description required or even permitted by law, was advertised for sale on the 4th of January, 1873. If the whole of the property so advertised had been sold on that day in conformity with law, there could have been no possible objection to the validity of the sale or to the title of the purchaser thereunder.

But, it appears, that a few days prior to the sale, W. S. Calhoun, who with his sister, the present plaintiff, were the sole heirs of Mrs. M. S. Calhoun, acting for himself and as agent for his said sister, applied to the district court and obtained an injunction restraining and prohibiting the tax collector "from proceeding with the sale of the Smithfield, Ferenzie, Meredith and Mirabeau plantations, *except twenty-one acres or lots of ground, being part of the Smithfield plantation, and reserved or laid off as the town of Colfax.*"

The evidence establishes that the succession of Mrs. M. S. Calhoun remained unadministered until June 3d, 1873, on which day W. S. Calhoun and the present plaintiff presented their petition to the parish court, asserted their sole heirship, accepted the succession without benefit of inventory, and obtained a decree recognizing them as unconditional heirs and putting them in possession of the property. It is proved that from the death of Mrs. M. S. Calhoun, W. S. Calhoun continued to exercise the exclusive management of the property, and constantly acted, and represented himself, as the agent of his sister and co-heir. His authority to represent his sister in the injunction suit above mentioned is not disproved by any evidence; nor is it denied by plaintiff in any pleading or in any testimony given by her, in this suit. It is impossible to suppose that she was ignorant that he was administering and managing these princely estates in which she had so large an interest, and that he was acting therein as the representative of her interest as well as of his own, especially as it is proved that she was present in the parish in March, 1872, preceding the sale. Under such circumstances, we consider that she is not authorized to rely upon the mere absence of proof of express mandate which it was not within the power of defendant to furnish, but was bound to repudiate or disprove the presumption of authority resulting from long continued action as her agent of which she could not have been ignorant. The motives and objects prompting Calhoun in excepting the twenty-one acres from the

injunction, are suggested by the testimony. He desired to have the town of Colfax, the parish seat of the new parish, established on those twenty-one acres, which, it was supposed, would add to the value of the surrounding property. He desired to sell that property to persons desiring to settle in the proposed town. Incumbrances on the property interfered with the passing of titles; and tax sales would obviate this difficulty. Hence the exception of these lots from the injunction.

These matters, however, we refer to merely incidentally.

The salient fact is that the injunction taken out by Calhoun, who was undivided half owner, arrested the sale of all the property except the twenty-one acres referred to, and left the collector free to sell those twenty-one acres.

We have been referred to no principle of law preventing the collector from proceeding with the sale so far as not enjoined.

The pretension that these twenty-one acres had not been assessed is untrue. They were a part of Smithfield plantation which had been validly assessed as such.

It is settled that under an advertisement for the judicial sale of a piece of land as a whole, part of it may be validly sold, when the sale of the remaining portion has been stayed by injunction or for other legal cause.

Lossee vs. Delacy, 23 An. 287.

Clay vs. O'Brien, 24 An. 234.

The last mentioned case involved a sale for taxes, and fully covers the present one.

The property here in contest was a part of the twenty-one acres exempted from the injunction, and the sale thereof was valid.

We have examined the numerous bills of exceptions taken by counsel for plaintiffs and find no merit in any of them.

The final objection that the sale was invalid because made after the second Monday of December, 1872, at which date it is claimed these taxes passed, under the law, into the list of delinquent taxes, has no force. It is apparent that the proceedings for the sale of this property had been initiated long prior to that date, and were then in progress. They were not interrupted by the arrival of that day, nor is there any thing in the law to prevent the consummation of such pending proceedings. The judgment appealed from is, therefore, affirmed at appellants' costs.

Rehearing refused.